Day, J.
Numerous perplexing questions have been presented in this case, but they are all founded on the assumption that Kate J. Boyd derives title under the will of her grandfather1, John Boyd. If this assumption be not well founded, there is an end of the case. This, then, is the prime question to be considered.
There is no express devise to grandchildren; nor is there anything in the will that will admit of that construction. The devise is to “ children; ” if, therefore, she has any interest in the estate in controversy, she derives it by descent ■from her father, James S. Boyd, who was the child of the testator. If nothing was vested in him at the time of his ¡death, she can inherit nothing from him.
The question, then, is, whether an interest under the will •vested in James S. Boyd. He survived the testator, but died ’before the widow, “ after ” whose death the property was to •-be divided. The property was to be divided equally .amongst the testator’s children, “ or the survivors of them.” It is necessary, therefore, to ascertain what was the point of time at which the survivorship was to be determined. Was •it at the decease of the testator, or of his widow, who had a .life interest in the property? This depends entirely upon the intention of the testator. In seeking that, we arrive at the same result, whether we apply the settled rules of the '•law, or are guided only by a study of the will itself.
The ancient holdings on this subject have been much ¡modified by more recent decisions. Also the soundness of *35 the distinction, taken between real and personal estate, has been questioned, until it has nearly or quite faded away. 2 Jar. on Wills [650] ; Hawkins’ Treat. 262.
The case of Young v. Robertson (8 Jurist, N. S., 825), decided in the House of Lords in 1862, is directly in point. It was a will of real and personal estate to trustees, to account to the widow during her life, and, after her death, to certain grand nephews and nieces, or their survivors.
In that case it was held, “ upon the authorities, as well as upon principle,” to be the rule, “ that where there is a clause of survivorship, prvma-faoie survivorship means the time at which the property to be divided comes into enjoyment— that is to say, if there be no previous life estate, at the death of the testator; if there be a previous life estate, then at the termination of that life estate:” or (as the rule is more briefly stated by the Lord Chancellor), that words of survivorship should be referred to the period “ for the payment or distribution of the subject-matter of the gift.” This is declared by him to be “the rule that is now finally established ” in England.
This undoubtedly is the general rule recognized in this country, subject, of course, to such modifications as the paramount rule, giving effect to the intention of the testator, may require.
We think the general rule is the law applicable to this case, and that it is in harmony with the obvious purpose and intent of the testator, as gathered from the will.
Nor are we embarrassed by any question as to the state of the legal title to the leasehold in controversy, during the lifetime of the widow, for this court, in the case of Boyd v. Talbert (12 Ohio, 212), held, that it • was vested in the executors. The legal estate, then, was not vested in the father of Kate J. Boyd during his life.
Nothing is given directly by the will to the children, except the library to the sons, and the household furniture contingently to the daughters. Everything else is given to the wife, “ to be used, employed, and kept by her during her natural life, for the support of herself, and the support and *36 education of the minor children.” It is only that which, may he “ remaining ” after her death, that he directs to be di vided amongst the children. Their interest, then, attaches at her death, and to that only which may bo then remwming.
This view is strengthened by the provision in the will for the repayment of any advances the widow might make to the sons; nor does this provision conflict with that requiring the division to be made only among his children who might be alive at the period fixed for the distribution.
It is clear, then, that, during the life of the widow, no interest in this leasehold vested in the father of Kate J. Boyd. He died before the time for the distribution of the estate arrived; therefore, nothing vested in him or his heir, for the distribution was to be made only amongst the “ children ” of the testator that might be surviving at the time mentioned in the will for the distribution.
The testator, it would seem from the record, was an educated man, and' from the manner in which he has frequently used the words, “survivors of them” in his will, we cannot but think that he fully understood their meaning, and that he intended to use them in their ordinary sense, when applied to his children, as he clearly does, in the same sentence, when applied to his executors.
■ He directs his “ executors, a majority or the survivors of them,” to make the division “ equally amongst all my children, male and female, or the survivors of them.” The distribution is to be made by the executors to the children, if all of each class are alive when the period for the division arrives; if not, then it is to be made by one class of survivors to the other class of survivors, — that is, by those of one class then living to those of the other class then alive.
The testator has used apt words to confine the distribution of his property to his own children; and, in the absence of anything indicating a contrary intention, it is but reasonable to presume that he intended what is imported by their ordinary sense.
We are, therefore, constrained to hold, that the plaintiff, in the court below, had no interest in the leasehold for which *37 she brought suit. It follows that it is unnecessary to consider the other questions made in the case, and that the judgment of the court below must be reversed.
Brinkerhoff, O.J., and Scott, Welch, and White, JJ., concurred.